Edward KROCK, Defendant, Appellant,

v.

ELECTRIC MOTOR & REPAIR COMPANY, Inc., Plaintiff, Appellee.

No. 6167.

United States Court of Appeals
First Circuit.

Heard Dec. 2 and 3, 1963.

Decided Jan. 27, 1964.

Robert W. Meserve, Boston, Mass., with whom John R. Hally, David A. Wylie and Nutter, McClennen & Fish, Boston, Mass., were on brief, for appellant.

Frank L. Kozol, Boston, Mass., with whom Lee H. Kozol, Charles G. Kadison, Jr., and Friedman, Atherton, Sisson & Kozol, Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is an action for breach of a contract, dated September 30, 1955, to sell a specified lot of secondhand electric motors. Plaintiff buyer, a North Carolina corporation, was, as its name implies, engaged in buying, selling and repairing motors. Defendant, a citizen of Massachusetts, was a purchaser in liquidation of a mill in Lawrence, Massachusetts and was in the process of disposing of the property. The mill was one of the last in the country having 40-cycle, instead of 60-cycle, motors. After the contract was entered into a number of controversies arose, and on May 3, 1956 when, admittedly, delivery was in arrears, the parties entered into a further agreement, involving other motors. (For convenience, although perhaps inaccurately, we will call this the second contract.) Defendant contends that this was in substitution for the original agreement. Although frequently requested, defendant failed to complete its obligations on the second contract, and plaintiff brought suit on the first. Prominent in its complaint was a demand for lost profits because of defendant's incomplete performance.

The case was tried to a jury. On the third day of trial, the second contract having been previously introduced in evidence, the plaintiff sought to prove what

it could and would have done to convert to 60-cycle and resell the undelivered motors called for by the first contract. Defendant objected on the ground that such evidence was "not material." It was clear from the discussion that by this defendant was not seeking to distinguish between lost profits and other forms of what he terms in his brief "consequential" damages, but was objecting on the ground that the first contract had been "settled."[1] The objection was overruled and a great deal of evidence bearing on lost profits was thereafter received.[2] When both parties had rested defendant moved that all evidence as to lost profits be struck out.[3] This motion was denied. The court then submitted the case, instructing the jury, without objection by the defendant, that it was for the jury to say whether the execution of the second contract of itself discharged the first, and stating, if that issue were determined in favor of plaintiff, the conditions under which lost profits could be found to constitute recoverable damages. The jury found for the plaintiff in an amount which made clear that it had resolved both of these issues against the defendant and, after his motion for a new trial was denied, defendant appealed.

■ The threshold question is whether the defendant (who was not represented by present counsel) adequately saved his rights on the only two issues now presented, viz., the effect of the second contract, and the imposition of liability for lost profits. Since these were matters that could have been asserted prior to the motion for a new trial, an attempt to claim them in that motion was without effect so far as an appeal was concerned.[4] See Sears v. Pauly, 1 Cir., 1958, 261 F.2d 304; Contorno v. Flota Mercante Grancolombiana, S.A., 2 Cir., 1960, 278 F.2d 719; Kirstner v. Atlantic Greyhound Corp., 4 Cir., 1951, 190 F.2d 422; Atlantic Coast Line R. Co. v. Mims, 5 Cir., 1952, 199 F.2d 582; United States v. 4 Cases * * * Slim-Mint Chewing Gum, 7 Cir., 1962, 300 F.2d 144; Aetna Ins. Co. v. Barnett Bros., 8 Cir., 1961, 289 F.2d 30, 33; Hoblik v. United States, 8 Cir., 1945, 151 F.2d 971. Plaintiff is wrong, however, in contending that even if defendant's objections were properly raised during trial they were thereafter waived by failure to object to instructions to the jury which were contrary thereto. Boyd v. United States, 1892, 142 U.S. 450, 457, 12 S.Ct. 292, 35 L.Ed. 1077; Coca Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., 1953, 203 F.2d 859, 861–862; Union Pacific R. Co. v. Owens, 9 Cir., 1944, 142 F.2d 145, cert. den. 323 U.S. 740, 65 S.Ct. 57, 89 L.Ed. 593. As the court said in Keen v. Overseas Tankship Corp., 2 Cir., 1952, 194 F.2d 515, 519, cert. den. 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363, "Nothing goes further to disturb the proper atmosphere of a trial than reiterated insistence upon a position which the judge has once considered and decided." Plaintiff's cases with respect to failure to object to instructions either deal with assignment of the charge itself as error,

---

1. Although defendant then spoke of a May 23 settlement, we will assume in his favor that he meant also the now relied upon May 3, or second, contract.

2. The defendant renewed his objection at the next appropriate occasion, and was then told that he might have a continuing objection to evidence of lost profits. There is nothing to suggest, however, that this was in connection with any broadening, express or implied, of the basis of the objection.

3. The motion assigned four grounds: that such loss of profit was not proved to a "reasonable degree of certainty"; that the second contract was a discharge; that no contracts of resale were made after the execution of the second contract, and that lost profits could not be recovered as a matter of law. These grounds, except the first, will be discussed subsequently. As to the first, defendant has caused our eyebrows to rise with respect to the damages, but not our throat. While we see many possible weaknesses, these should have been explored below, which, on the record before us, they were not.

4. Certain other matters were raised by the motion for new trial, but as to these we find no abuse of discretion in its denial.

or involve objections not made and ruled upon previously.[5]

■ It is difficult to understand (apart from fn. 1, supra) plaintiff's contention that defendant did not seek (unsuccessfully) a ruling during trial that the first contract was discharged by the second whether performed or not. This was precisely the stated basis of his continuing objection to the evidence of lost profits. But, while the parties could, of course, make such an agreement, see e. g., Tuttle v. Metz Co., 1918, 229 Mass. 272, 118 N.E. 291, we must agree with plaintiff on the merits that the second contract did not require that interpretation. Not only is defendant's position contrary to the usual law of accord and satisfaction, see McFaden v. Nordblom, 1940, 307 Mass. 574, 576, 30 N.E.2d 852; Sherman v. Sidman, 1938, 300 Mass. 102, 14 N.E.2d 145, but it also disregards the concluding clause of the agreement following the detailing of defendant's promised performance which, it was stated, "will complete and cancel remaining contract." [6] Even apart from the word "will" it could not be said as matter of law, if, indeed, it could be said at all, that "remaining contract" meant "now superseded contract."

■ We are equally unreceptive to the suggestion that plaintiff's ceasing after May 3 to contract for the resale of further motors due under the first agreement and seeking, unsuccessfully, to obtain defendant's performance of the second, meant it was thereby electing to take the promise of performance as equivalent to performance. Plaintiff was, of course, "electing" to proceed under the second contract, but defendant still had to perform that contract before the provision discharging the first became effective. Wind v. England Walton & Co., 1 Cir., 1923, 287 F. 97; Corrigan v. Payne, 1942, 312 Mass. 589, 45 N.E. 2d 829; Zlotnick v. McNamara, 1938, 301 Mass. 224, 16 N.E.2d 632.

■ The contention defendant seeks to advance in this court with respect to lost profits is that that was not the proper measure of consequential damages because plaintiff failed to prove certain matters which, allegedly, are necessary conditions for such a recovery. It was incumbent on defendant to raise this point at some stage before verdict. If, conceivably, this could have been done when plaintiff first sought to introduce evidence of lost profits, it was not accomplished by specifying an objection of another character.[7] Knight v. Love-

---

5. The lone exception among the cases relied on by plaintiff is an Eighth Circuit decision expressly overruled in Coca Cola Bottling Co. v. Hubbard, supra.

6. The entire relevant portion of the second contract dated 5/3/56, was as follows.
    "It is agreed that Electric Motor & Repair Co. Raleigh, N. C. has got on deposit $9,230.00 (Nine Thousand two hundred and thirty even dollars) with the American Mill Syndicate, % Edward Krock, Worcester Mass, and is due 31–FK20 switches at no charge, (to fulfill motor orders previously shipped less switches less switches [sic]). It is also agreed that the Syndicate will ship 770 HP as selected (order to follow) and agreed upon on contract basis/HP and sent to E M & R Co. a check in the amount of $6920.00 which will complete and cancell [sic] remainig [sic] contract."

7. We cannot accept plaintiff's seeming argument that defendant preserved no objections at all because he did not comply with F.R.Civ.P. 46 by "mak[ing] known to the court * * * his grounds therefor." We are surprised at this late date to be asked to interpret this clause so literally. A general, unspecified, objection is normally sufficient to save rights to the admission of evidence admissible on "no tenable theory," New England Newspaper Pub. Co. v. Bonner, 1 Cir., 1934, 68 F.2d 880, 881, cert. den. 292 U.S. 625, 54 S.Ct. 630, 78 L.Ed. 1480, if the incompetency "could not have been obviated." See Noonan v. Caledonia Gold Mining Co., 1887, 121 U.S. 393, 400, 7 S. Ct. 911, 30 L.Ed. 1061. This is not the place to discuss what is meant by "obviated," but merely to point out that the present case is not one of a general objection, but, rather, a case of specifying one ground and then attempting to assert another.

man, Joseph & Loeb, Inc., 5 Cir., 1954, 217 F.2d 717; Maulding v. Louisville & N. R. R., 7 Cir., 1948, 168 F.2d 880; Johnston v. Reily, 1947, 82 U.S.App.D. C. 6, 160 F.2d 249. Nor did defendant make any request at the close of the evidence for instructions advancing his present contention. All that he can point to is the final paragraph of his motion, supra, to strike the testimony relating to profits on the general ground that "[a]ny claim for loss of profits cannot as a matter of law be recovered in this action."

While it is our duty to see that rights properly taken are not readily lost, it is equally our concern to see that the trial court was adequately informed of an objector's position. Although this is sometimes put in terms of fairness to the trial court, with all respect to such judges, who may sometimes feel a personal stake, the issue lies deeper. The public, generally, has an interest in the speedy determination of litigation, and it is inimical to that interest not to raise until appeal what could have been considered before. This is obvious where successfully asserting a new matter would require a second trial that might otherwise have been avoided. But to a significant degree it applies when the point, if made, would have terminated the proceeding or, possibly, avoided the appeal. While, of course, there is a counter interest, that absolute justice be attained regardless of the lack of diligence of the injured party, this is an exception that we are not quick to recognize over the requirements of orderly procedure.

A motion to strike evidence is not a customary manner of raising a question whether proof in another respect, that is, whether sufficient evidence of all necessary subsidiary issues, had been adequately presented. If it is to do so, particularly where the point had never been made before, there must be something more than a general, unexplained catch-all clause.[8] Defendant had ample opportunities to make his damage point, but failed to take any. Whether it be termed second guessing, or an afterthought, his point is now too late. Cf. Reiss v. United States, 1 Cir., 1963, 324 F.2d 680, cert. den., Jacobs v. U. S., 84 S.Ct. 667.

Judgment will be entered affirming the judgment of the District Court.

---

**8.** Defendant's argument that he could have moved for a directed verdict in the normal case, but could not here because of the existence of other claims, does not aid his case, for if he could have so moved he would have been required to "state the specific grounds therefor," F.R.Civ.P. 50, see Virginia-Carolina Tie & Wood Co. v. Dunbar, 4 Cir., 1939, 106 F.2d 383,

unless, of course, the basis of the objection could not have been misunderstood by the court, O'Halloran v. McGuirk, 1 Cir., 1909, 167 F. 493, 494; Curtis Pub. Co. v. Fraser, 5 Cir., 1954, 209 F.2d 1, 6; Lewis v. Nelson, 8 Cir., 1960, 277 F.2d 207; New York Life Ins. Co. v. Doerksen, 10 Cir., 1935, 75 F.2d 96.